Our next case is Voice Tech Corporation v. Unified Patents, 2022-2163. There are two main points I'd like to make today in my argument. One has to do with the Notice of Supplemental Authorities that was filed by Unified last week. In that notice it talked about a clerical error. But I think it's important to point out that there are two claims in the Challenge to Patents, Claims 5 and 7, that have a mobile device interface limitation. Nowhere in the Petition, nowhere in the Claim Charts, nowhere in the Expert Declaration that was filed with the Petition did it mention the mobile device interface. There's not an error, I mean it was not a clerical error, it was a complete failure to even address this limitation. And therefore, Unified failed to meet its burden of proof and at the very least, Claims 5 through 8 are patentable. The second point I'd like to make today is that there are two prior art references, Wong and Beauregard. In each of those references, the user sets up a database wherein it's something like, if I say X, then I want Y to happen. And the computer uses a matching function to accomplish, to determine, okay, is X been said? If so, then I'm going to do Y. There is no audio command interface deciding what application or what operating system would be appropriate to execute at least one or more processes in response to a command. And therefore, the combination of these two references, Wong and Beauregard, do not disclose the deciding element, which is in each of the claims at issue, and all of the claims should be found patentable. Do you agree that what we're considering is whether the P tab of use is discretion in interpreting the petition as alleging at the time that it's called a mobile device interface, basically addressing the first issue that you raised? There are two issues that are very close together. One is just the main issue of, did they just unify needed burden of proof on obviousness? And that is a standard of review under obviousness, so the conclusion of obviousness is reviewed de novo, and then you've got the... I want to look at the interpretation of the petition issue and the standard of review associated with that. Okay, and that is related because the P tab did come back and say, you know, we think there is an argument in there on the mobile device interface, and that is reviewed for an abuse of discretion. Which it is our contention that it is an abuse of discretion because it was clearly unreasonable, rests on clearly erroneous fact findings, and it involves a record that contains no mention of the mobile device interface anywhere. I may agree with you that the petition is less than clear, but as you were talking about with Judge Cunningham, this is an abuse of discretion question, and the board, in its institution decision, made it pretty clear, and I'm going to be reinforcing that in my final written decision, that the petition overall is reasonably discernible what elements from law correspond to what would be a mobile device interface, not through what it expressed instead in the petition section as to claim five, but by cross-referencing backwards analysis in claim one, where in claim one it was specifically referring to certain elements of law, and then also in that analysis talking about the built-in services that the operating system would transmit the output data back to the mobile device. So when I read those portions, that doesn't look like an unreasonable reading. Sure, it could be more organized, it could be more clear, it could be less messy, but there's still a thread through all of that where you can see what actual structural elements of law would correspond to a mobile device interface. So, in the scheme of things, I guess we're left with asking ourselves, why is that an abuse of discretion for the board to see what it saw in the claim one analysis? Well, first of all, if you look at the arguments for claim five and claim seven, which are the two claims that have the mobile device interface, both of those claims in the arguments talk about, okay, we're going to include a table that's going to have cross-references to earlier claims, because we want to have a table that shows, look to these earlier claims if there's a corresponding limitation. But the mobile device interface is not a corresponding limitation in claim one. It's not in any other, it's not in claim one, which was what the cross-referenced issue is in element 1.6. So, if it was not a corresponding limitation, it was supposed to be addressed in the claim five argument or the claim seven argument. Given that there was no reason to look at these cross-references, there's no point to go to 1.6 at all. And then, even going to element 1.6, you look at that. At the very end, it talks about built-in service. It's just a general statement about computers having built-in services and a means to transmit data, and that's it. There's no argument at all that this somehow relates to the mobile device interface, and it wouldn't, because there's no mobile device interface presided in claim one. So, it is an abuse of discretion, because the board is looking at these arguments on claim five and on claim seven. It's making a leap over to element 1.6's arguments, which is not justified under the petitioner's own words in the petition. Only go to claim 1.6 for corresponding limitations. And then looking at, even if you do jump to the 1.6 arguments, there's nothing there on mobile device interface. And there's not enough there on the built-in services term to explain that this is a mobile device interface, and that it meets any kind of definition of mobile device interface. Okay. If there are no other questions, I'll reserve the rest of my time for rebuttal. There's one statement for you. Thank you. Adam Erickson. May it please the court, Adam Erickson for Unified Patents. As we've just discussed, Boyce Tech's primary argument on appeal is that the petition did not adequately address the mobile device interface, or MDI. And as an initial matter, this argument only affects claims five through eight, but it ultimately fails because it imposes the wrong standard. There's no requirement that petition grounds or claim language be stated word for word or in any particular place in the petition. Rather, the correct standard simply requires that petition grounds are, quote, fairly presented and offer, quote, an understandable explanation. And here we know the petition was understandable because both the board and Boyce Tech actually understood it. For example, in the institution decision, the board readily saw this connection between built-in services and MDI based on a review of the petition alone. And from that point on, Boyce Tech was well aware of the mapping, as is evidenced by its repeated objections throughout the proceeding. But if there is any room for doubt, the standard of review here, again, leaves no room for doubt here because it is a review of the board's decision to interpret the petition for abuse of discretion. Regarding the MDI specifically, I think it's important to remember that the board reviewed the analysis at Claim Element 1.6 with the understanding of two things. First, the relationship between Element 1.6 and 5.8. And they explained at Appendix 42 that Element 1.6 recites a step of a method that's specifically transmitting the output data to the mobile device, whereas Claim Element 5.8 simply adds the component that performs that step. Your chart in the petition for Limitation 5.8 is a typo, right? It doesn't actually recite the correct limitation? It does correct, Your Honor, that it doesn't recite Claim Element 5.8 of the chart. And this is on Appendix 131 to 132. But regardless of any mistake, to the extent that a mistake is even made here in the chart, there's a clear cross-reference from 5.8 back to 1.6. There is a mistake in the chart. It's not that to the extent there's any mistake. It's true that it recites Element 1.6 here instead of 5.8, whereas the rest of the chart recites 5. That's correct. However, the last row here, simply the arrangement of Element 5.8 on the left and 1.6 on the This would have referred the reader back to Element 1.6. And then in addition, the text introducing this chart makes it clear that even any differences between the elements here would have been rendered obvious based on the Claim 1 analysis as well as the Claim 5 analysis to the extent that that was needed. To be specific... Why don't you tell us more about why the reference to 1.6 is sufficient here? Certainly. That's addressed at Appendix 119 through 121. And to start the board, or excuse me, the petition at Appendix 119 quoted Wong, Paragraph 41, which says, The Home PC-210 executes the commands received at Clock 312. It transmits data and or files to the device. And then on the next page, Appendix 120, it provides Figure 3 and highlights Step 314, which similarly says, Send data slash files to the mobile device. So if you look at Claim Element 1.6, this is all that was required for 1.6. That again recites the step of a method, which is transmitting the output data to the mobile device. But Unified didn't stop there. On the next page, Appendix 121, it then went on to specifically address what component performs this step, and that's what was required by 5.8. There it says, Computer applications generally use built-in services of a computer operating system to provide a means to transmit output data to other applications, operating systems, or devices. And so here again, because the board understood the relationship between 1.6 and 5.8, that 1.6 is simply a step of a method, whereas 5.8 is the component that performs that step. And based on the clear cross-reference from Petition 5, a claim analysis that's Claim 5 back to Element 1.6, the board simply reviewed the 1.6 analysis looking for both the functionality recited by 1.6 and the component that performs that recited by 5.8. And it found both. It certainly wasn't an abuse of the board's discretion to simply follow that structure in the petition. Next, we'll turn to Element 1.3. This is the deciding or selecting limitation that was raised. Here, VoiceTex's only argument is that a pre-configured system does not itself decide or select anything. It argues that the user decides or selects which application or operating system will be used and that the system simply follows those pre-configured instructions. But here, the board found first that the 679 patent itself also describes a pre-configured system and cited to multiple references throughout. But in addition, it credited Mr. McNair's testimony, Unified's expert, where he explained that essentially all computer code that decides or selects anything is also pre-configured, either by the user or by the original programmer who created that code. And so for these reasons, the board's findings related to the deciding and selecting limitation, limitation 1.3, are supported by substantial evidence, and VoiceTex has not overcome that standard. Unless there are any additional questions from the board. It's your view that 37 CFR 42.71 requires a party to argue every single issue it disagrees with the board in the board's final written decision in order to preserve all those issues when it files an appeal at this court? So that was the outcome in Polycom from this court. Polycom is not correct. That's true. It's also a very unusual fact pattern in the parties we examine. That's true. It is an issue parties re-examine in Polycom, however... Who just says, you know, for a regering request, identify all matters the party believes the board misapprehended or overlooked? Yes, you. You think that means they have misapprehended or overlooked, meaning every single issue you happen to disagree with the board on? Or maybe just the issues where the board ruled against you, but based on what you see the board saying, it appears the board overlooked one of your arguments, or maybe completely misunderstood your argument. I think the holding in Polycom was the first interpretation that it must raise every issue. However, as you noted, it is a non-presidential decision, and there has been a number of cases since then addressing either the same regulation, 4271, or others that are similar, either related to inter-parties re-exam or ex-parte re-exam as well, where this court has simply noted that the decision to, I guess, apply this waiver to the extent that these regulations do actually apply such a waiver, that that is discretionary and that they chose to resolve the issue on the merits instead. And so that would certainly be the case here as well, but to the extent this court does not agree that that is how Regulation 4271B should be interpreted, the correct result is still affirmance based on the merits. Unless there are additional questions, I'll just again emphasize that the board's reasoning here was well-reasoned and consistent throughout, and it showed why the claims at issue here would have been obvious of a wrongful regard. And for these reasons, we unify and respect the request of this court. With that, I'll concede the rest of my time. Thank you, counsel. Mr. Adams, has your puzzle come up? For rebuttal, I would just like to point out that there are two prior references, Wong and Beauregard, and Wong is basically somebody who has pictures on their computer. They set up a database on their computer with a photo application only, and basically the instruction coming from the mobile device is, I want to see picture X. So they set up a command in the database that says, I want to see picture X, and then the instructions are to the computer, if I say I want to see picture X, you need to send picture X to my mobile device. The user is making the decisions in that situation. There's no audio command interface making a decision as to what application to select in order to execute a process in response to the command. In fact, there's only one application in Wong, just the photo application, so there's no need to have any kind of a decision as to what application to use at all. Beauregard is actually just a voice macro program. The user sets up a database, kind of like if you have a keyboard and you want to set up a certain combination of keys to populate a Word document or an email with a long word maybe you don't want to type all the time. So that's all Beauregard is doing. It's doing that same thing, except instead of having to come up with a key combination, the user just has to speak it into the microphone of the computer. So the user has to go in for every macro he wants to set up, he has to say, when I say X, I want Y to populate on the screen. So there's no component of the computer, there's no audio command interface that's making a decision, what application should I select in order to execute processes in response to this command. It's the user in both of those prior references that's making the decision, when I say this, I want this to happen. What do you think the term decides means in this plan? I mean, the term decides is not in the specification. And clearly the board is relying on this idea that in the prior art, you can have these pre-configured instructions where if a voice command is interpreted, if the audio data is converted to being a certain command that's understood to be referred to a particular service to be called up, then that's what happens. And that's how the decision is made. What else could decide mean in the context of this plan? Well, decides in the context of this plan is essentially evaluating the different options, applications, operating systems, to execute at least one process in response to the command. When the board looked at it, it said that it was recognizing and executing predetermined commands. I guess what I'm trying to figure out is, is it your view the computer is like a free agent, exercising independent thought, and it's just taking into account all kinds of variables and then in its own judgment, the extent the computer has judgment, is deciding which application to call up? No. Okay, so what does it mean? Does it encompass the idea of pre-configured instruction? Well, there's going to be, because it's a computer program, there's going to be source code, computer programming that's going to explain to the audio command interface or I guess direct the audio command interface on how to evaluate. When you receive a command, how do you evaluate the different options? Because the audio command interface is going to have a relationship with each of the applications. Kind of like a general contractor with subcontractors. And so the coding for the computer program will explain to the, or I guess direct the audio command interface. When you receive commands, you need to evaluate it in whatever way it is coded. I mean, the difficulty here is that it's not like pre-configured instructions. It's pre-coded in a particular way. It channels the interface to call up a particular service or application. Well, it's explaining to, I keep saying explaining. It's a different thing. It's directing the computer program, this is how, these are the steps you need to operate in in order to make a decision as to the application. The computer coding is different than a user going into a database and saying if I say X, I want Y to happen. Because in that situation, the user is just saying, I want this specific thing to happen if I say X. But in the computer coding, it's not telling the audio command interface in every single situation when the user says X, Y has to happen. You're going to receive a command and you've got to evaluate that command. You have to decode it. You have to evaluate it and decide, okay, what would be the best application in these circumstances in order to execute the processes in response to that command. So one system in the claims is setting up a situation where the audio command interface can make those decisions. It's not trying to foresee every single possible decision that may need to be made. But in the prior art references, that's what's happening. The user has to foresee all the different commands they may want to make. They have to include it in the database. And then in response to that command being matched, those instructions are followed. And in your view, the specification excludes that idea, the matching idea? It doesn't exclude matching. There's discussions in the specification about matching. That's what I thought. It's separate from the excerpts from the specification that were relied upon for the design limitation. In paragraphs 39 and 43 of the specifications in the application, there is no discussion. Those are the excerpts that were specifically relied upon by the applicant in adding the design limitation to the claims. And there's no discussion in either of those paragraphs about the matching operation. Anything further, counsel? Nothing else, Your Honor. Thank you. The case is submitted. Thank you.